UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION-INDUSTRY PENSION FUND and its Trustees,<br><br>        Plaintiffs,<br><br>   v.<br><br>H.D. WEIDCO/STER, LLC,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)  08 C 2521<br>)<br>)  Judge George M. Marovich<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs United Food and Commercial Workers' International Union-Industry Pension Fund (the "Fund") and its trustees filed a complaint against H.D. Weidco/Ster, LLC. In the complaint, plaintiffs seek pension contributions. Plaintiffs have moved for summary judgment. For the reasons set forth below, the Court denies the motion for summary judgment.

**I.    Background**

Before the Court discusses the undisputed facts, it reiterates the importance of complying with Local Rule 56.1. Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed.

Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This, however, does not absolve a party of its initial burden of putting forth admissible evidence to support its facts. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. In this case, plaintiffs failed to respond to defendant's statement of facts. Accordingly, the asserted facts that defendant supported with admissible evidence are deemed admitted. The asserted facts defendant failed to support with admissible evidence, on the other hand, are not deemed admitted merely because plaintiffs failed to respond. In many cases, defendant failed to attach the cited evidence and, therefore, failed to support those facts. Such facts (including the facts asserted in ¶¶ 1, 2, 3, 6, 8, 12, and 29, among others) are not deemed admitted.

The following facts are undisputed unless otherwise noted.

Defendant operates a residential nursing home, Sterling Manor, in New Jersey. Its employees are represented by United Food and Commercial Workers Union Local 815S (the "Local Union"). In March 2002, Sterling Manor and the Local Union entered into a collective bargaining agreement (the "CBA") that was effective from March 2002 until March 14, 2005. The CBA states, in relevant part:

ARTICLE 5

CLASSIFICATION OF EMPLOYEE

 (a) A 'regular full-time employee, shall be one who has completed has [sic] probationary period, who works a regular schedule and not less than a weekly average of thirty-two (32) hours per week and who receives all benefits under this agreement.

(b) A 'no-benefit' full-time employee who [sic] shall be one who has completed his probationary period, who works a regular schedule and not less than a weekly average of thirty-two (32) hours per week, is covered by all of the terms and conditions provided by this agreement, except shall not receive the Employer Health Plan, Union Health Plan, Holiday, Vacation and Sick Leave days provided by this agreement, unless and until such employee exercises the option set forth in Article 6 herein.

(c) Effective March 15th 2000, any newly hired full-time employee, who elects to work as a non-benefit full time employee, shall be paid one dollar ($1.00) above the regular hourly starting rate of pay.

\* \* \*

## ARTICLE 6

### EMPLOYEE STATUS

(a) All employees hired on or after March 9, 1993, upon being hired, shall be given the option of either becoming regular employees, or no benefit employees, as such terms are defined in Article 5 herein. All such employees, who choose to become no benefit employees, shall execute a waiver to that effect. The said waiver shall be in the form and style as set forth in Exhibit "A" attached hereto and made a part hereof.

(b) Any no-benefit employee, as defined in Article 5 herein, may opt to change his/her status to regular employee, as defined in Article 5 herein, by notifying, in writing, the Employer. In the event such no-benefit employee exercises the aforesaid option, such change in status to regular employee shall be effective upon the first date of the calendar half following the said written notice (e.g. January 1 and July 1).

(c) Upon such effective date, the following events shall occur with regard to the opting employee:

(I) His/her wage rate shall decrease by the sum of $1.00 per hour;

(ii) He/she shall be deemed a new employee for the Purpose of the Employer's Health Plan, Union's Health Plan, Vacation, Holiday and Sick Leave benefits;

\* \* \*

## ARTICLE 38

UfCW PENSION PLAN

| PENSION | The Employer agrees to contribute thirty-eight |
| Effective | dollars and ten cents ($38.10) per month, per |
| 4/1/02 | employee to the UFCW Industry Pension Plan for |
| | all current employees.  All benefit employees |
| | hired after the effective date of this |
| | agreement shall be covered under this new Plan |
| | after twelve (12) months of employment. |

(CBA at 3, 4, 17).

The pension plan mentioned in the CBA is the plaintiff Fund, which is a multi-employer defined benefit pension plan.  Sterling Manor signed an Employee Participation Agreement that was effective April 1, 2002 and that specified the terms of defendant's participation in the Fund. Among other things, the Employee Participation Agreement stated that defendant agreed to be bound by the Fund's Agreement and Declaration of Trust.  That document, in turn, provides the Fund the authority to audit payroll and other employer records to determine the correct amount of pension contributions.

Each month, Sterling self-reports the number of full-time employees it employs and pays a contribution based on that number.

In September 2005, the Fund's auditors conducted an audit of defendant's contributions. According to the audit, defendant owed contributions of $6,781.80 for the period of July 1, 2002 to December 31, 2003.  As of August 31, 2009, $3,450.87 in interest had accrued.  The audit cost $590.00.

On February 2, 2007, the Fund sent a copy of the audit to defendant and requested payment of delinquent contributions.  Defendant responded and argued that the audit was wrong,

in that it included "no benefit" employees and employees who had worked fewer than twelve months.

The President of the Local Union, Peter Faucella, agreed with defendant that additional contributions were not required. On July 24, 2008, he wrote a letter to the Fund's attorneys. The letter stated, in relevant part:

> I am writing concerning a recent payroll audit for the period July 2002 through December 2003 conducted at Sterling Manor Nursing Home (ER #41289/Local 815S). The resulting determination was that Sterling Manor had underpaid contributions in the amount of $6,781.80. The Company is disputing that amount and had asked my assistants [sic] to help clarify this matter. The facility has had a collective bargaining relationship with Local 815 for many years. During the negotiation process for the CBA, dated March 15, 2002, through March 14, 2005, there were modifications made to the pension clause in the agreement that would have been effective on March 15, 2002. Prior to this date all employees covered by the CBA participated in the pension. This was modified to <u>only</u> the <u>benefit</u> employees that were hired <u>after March 15, 2002</u> and <u>working twelve months</u>. This is clearly stipulated in Article #38 (UFCW Pension Plan). Therefore, during this period, the employer would have been responsible to make contributions for <u>only</u> this group of employees. I believe there was a misunderstanding due to the language in Article #5 Classification of Employees, paragraph B, which refers to the no-benefit employees this was not revised to reflect the revisions made to the pension clause (Article #38).

Defendant did not then (at the time of the audit) and has never since produced copies of waivers for "no benefit" employees. In fact, defendant failed to obtain waivers from those employees.

The Fund's auditor conducted another audit in 2008, based on documents produced during discovery in this matter. The auditor determined that for the period of January 1, 2004 through November 30, 2008, defendant owes $35,394.90 in delinquent contributions. The auditors calculated interest due as $7,845.96. The auditors based these numbers on W2s

provided by defendant in discovery. The auditors believe this may have lead to undercounting employees and believe that an on-site audit is necessary.

Plaintiffs calculate the total amount due (including liquidated damages in the same amount as interest) of $69,550.56 plus attorneys' fees.

## II.  Summary Judgment Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III.  Discussion

**Delinquent pension contributions**

In Count I, plaintiffs seek delinquent contributions to benefit plans. Section 515 of the Employee Retirement Income Security Act ("ERISA") provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained

>agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. This provides the Trustees, who have standing to sue under ERISA, a right of action to enforce an employer's obligations to make pension contributions pursuant to a collective bargaining agreement (to which the Trustees are not a party).

When the collective bargaining agreement is unambiguous, a court may enforce it as a matter of law. *Central States, SE & SW Areas Pension Fund v. Kroger Co.*, 226 F.3d 903, 910 (7th Cir. 2000). If the contract is ambiguous, interpretations are left to the trier of fact. *Id.* "[Extrinsic evidence may not be used to create an ambiguity in a pension or welfare agreement subject to ERISA." *Central States, SE & SW Areas Pension Fund v. Joe McClelland, Inc.*, 23 F.3d 1256, 1259 (7th Cir. 1994). Oral side agreements or understandings between the local union and the employer are not enforceable. *Joe McClelland*, 23 F.3d at 1258 ("No matter what an employer and local union agree orally, the collective bargaining and contribution agreements establish the employer's obligation to the pension fund, which is not party to local understandings and limitations.").

The parties disagree as to which employees defendant is required to make contributions for under the collective bargaining agreement. The Fund argues that defendant must make a contribution for each full-time employee. The defendant argues that it must make a contribution only for benefit employees (as opposed to "no-benefit" employees) employed by defendant for more than twelve months. Each side finds some support in the collective bargaining agreement.

Two portions of the CBA support the Fund's argument. First, the CBA says that defendant "agrees to contribute thirty-eight dollars and ten cents ($38.10) per month, per employee to the UFCW Industry Pension Plan for all current employees." That language, taken

alone, suggests that defendant must contribute for all employees.  Additional support is found in the definition of "no benefit" employee in the CBA.  The CBA says that a no-benefit employee "is covered by all of the terms and conditions provided by this agreement, except shall not receive the Employer Health Plan, Union Health Plan, Holiday, Vacation and Sick Leave days provided by this agreement . . .".  The pension plan is not mentioned as one of the benefits from which the no-benefit employee is excluded, and the clause says the no-benefit employee is covered by all other terms of the contract.  Accordingly, the definition makes clear that no-benefit employees are covered by the pension plan, which is another term of the contract.

Where the Fund's argument loses steam and the defendant's argument gains credence is the pension clause itself, Article 38.  Here is what that article says, in its entirety:

ARTICLE 38

UfCW PENSION PLAN

| PENSION Effective 4/1/02 | The Employer agrees to contribute thirty-eight dollars and ten cents ($38.10) per month, per employee to the UFCW Industry Pension Plan for all current employees.  All benefit employees hired after the effective date of this agreement shall be covered under this new Plan after twelve (12) months of employment. |
|---|---|

The provision lists an effective date of 4/1/02 (a few weeks after the effective date of the CBA) and states that benefit employees hired after that date are covered after twelve months.  The two mentions of an effective date in Article 38 suggest that "current" in "all current employees" in the provision does not mean the day each month that the employer writes the check to the Fund, but the effective date of Article 38.  Article 38 never says whether contributions are required for no-benefit employees hired after the effective date.  Article 38 suggests (although it does not say

-8-

so explicitly) that employees hired after that date are divided into three categories: (1) benefit employees who have worked for more than twelve months (for whom contributions are due); (2) benefit and no-benefit employees who started prior to 4/1/02 (for whom contributions are due); and (3) all other employees (for whom contributions are not due), including no-benefit employees who started after the effective date and benefit employees who have worked fewer than twelve months.

The CBA is ambiguous, because the definition of no-benefit employee suggests that no-benefit employees are covered by the pension plan (and, hence, that the employer must contribute for all employees), while Article 38 suggests that for employees hired after April 1, 2002, only benefit employees who have worked twelve months are covered by the plan (and, hence, that the employer must contribute for only those employees). The CBA is unclear.

The Fund argues that even if an ambiguity exists, it is still entitled to judgment as a matter of law because none of defendant's employees qualify as no-benefit employees. The CBA provides that employees who "choose to become no benefit employees, shall execute a waiver to that effect." The CBA further states that "said waiver shall be in the form and style as set forth in Exhibit "A" attached hereto and made a part hereof." It is undisputed that defendant never obtained those waivers from the employees who it considered to be no-benefit employees. Thus, it is clear, as a matter of law, that all of defendant's employees were benefit employees during the relevant time period.

Even though all of defendant's employees were benefit employees during the relevant time period, that does not erase the need to resolve the ambiguity in the CBA. The contract is

still ambiguous with respect to whether defendant must make contributions for benefit employees hired after April 1, 2002 during their first year of employment.[1]

For these reasons, the Court concludes that the Fund has not shown that it is entitled to judgment as a matter of law. The motion for summary judgment is denied.

IV. **Conclusion**

For the reasons set forth above, the Court denies the motion for summary judgment.

ENTER:

*George M. Marovich*
George M. Marovich
United States District Judge

DATED: 1/27/10

---

[1] In its reply brief, the Fund asserts that the audit did not assess contributions for employees in the first year of employment. This fact was not included in the statement of facts, and the Court does not consider facts that are included only in a brief, because to do so would rob the other party of the opportunity to show that the fact is disputed. The Fund included in its statement of facts a letter from defendant, in which defendant asserted that the audit had assessed contributions for employees in their first year.